IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DENICE MCKEE, *Administratrix for*    )
*the Estate of Dwight Campbell, deceased*, )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )        Case No. 2:22-cv-00647-RAH-CWB
                                      )               [WO]
JEFFERSON S. DUNN, *et al.*,          )
                                      )
        Defendants.                   )

## MEMORANDUM OPINION AND ORDER

Dwight Campbell died while in the custody of the Alabama Department of

Corrections (ADOC) at Bullock Correctional Facility (Bullock).  According to the

First Amended Complaint, Campbell was bludgeoned and stabbed to death by

another inmate at Bullock while a single, unidentified correctional officer watched

and failed to intervene.  (Doc. 30 at 2, 5.)  Plaintiff Denice McKee, administratrix

for Campbell's estate (Estate), claims there was a known and widespread history of

weapons, overcrowding, understaffing, and complicity together with murder, rape,

and assaults at Bullock.  (*Id.* at 2.)  In the Estate's view, ADOC Commissioner

Jefferson Dunn, Bullock Warden Patricia Jones, Bullock Warden David Lamar, and

various "unknown correctional officer(s)" (collectively, the Defendants) failed to

provide adequate staffing and security and to address these dangerous conditions,

culminating in Campbell's untimely death.  (*Id.* at 2.)  The Estate sues Defendants

under 42 U.S.C. § 1983 for violating Campbell's rights under the Eighth and Fourteenth Amendments to the United States Constitution and Alabama's wrongful death statute, Ala. Code § 6-5-410.

Before the Court are the Defendants' motions to dismiss. (Docs. 39, 41.) The motions are fully briefed and ripe for review. For the reasons that follow, the motions are due to be granted in part and denied in part.

## I.  STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Federal Rule of Civil Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task

that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. But if the facts in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief,'" and the complaint must be dismissed. *Id.* (alteration adopted) (citing Fed. R. Civ. P. 8(a)(2)).

## II.   FACTUAL ALLEGATIONS

Dwight Campbell was a prisoner at Bullock Correctional Facility, a short-staffed correctional facility with a known history of inmate violence, as alleged, where he was serving time for property-related crimes. (Doc. 30 at 2, 8.) On November 9, 2020, Campbell "was attacked and murdered by another inmate"—allegedly because Campbell had been falsely accused of stealing another inmate's personal property. (*Id.* at 2, 9.) The attacker "may have been known to the Defendants to be both violent and suffering from a mental illness." (*Id.* at 9.) According to the First Amended Complaint, the inmate bludgeoned Campbell in the head with a stick or pole multiple times, causing injury to Campbell's head and skull. (*Id.*) After Campbell fell to the floor, the inmate pulled out a knife or ice pick and then began stabbing Campbell in his kidney area and then in his neck. (*Id.*) While all of this occurred, "prison staff simply watched or ignored the violent acts taking place." (*Id.* at 2, 9.) That staff consisted of a "single prison guard, assigned to Mr. Campbell's cell block, [who] merely watched and did nothing." (*Id.* at 5.) That

guard[1], who had observed the violence, did not provide Campbell with any assistance or care, did not notify anyone of Campbell's injuries, and did not take Campbell to the infirmary. (*Id.* at 10.) Instead, he instructed Campbell to go to the bathroom and clean himself up. (*Id.* at 11.) Campbell died later that day from his injuries. (*Id.*)

At the time of the murder, Jefferson Dunn was the Commissioner of the ADOC. (*Id.* at 6.) Patricia Jones and David Lamar were wardens at Bullock. (*Id.*)

## III.   DISCUSSION

In the First Amended Complaint (FAC), the Estate sues Dunn, Jones and Lamar in their individual capacities for violations of Campbell's constitutional rights for failing to protect him from harm and for depriving him of treatment for his serious medical needs after he was assaulted. The Estate also brings a state law wrongful death claim. *See* Ala. Code § 6-5-410. The Estate does not identify the inmate who assaulted and murdered Campbell, nor does it identify the correctional officer who observed the assault but failed to intervene or address Campbell's medical condition or needs. The Defendants move to dismiss, arguing the FAC fails to state a claim upon which relief can be granted because it constitutes an impermissible shotgun pleading, fails to plausibly allege any constitutional

---

[1] Prison guard and correctional officer will be used interchangeably.

violations by these Defendants, and is barred by the Defendants' entitlement to qualified and state-agent immunity.

## A.     Shotgun Pleading

The Defendants first argue the FAC is an impermissible shotgun pleading. They contend the counts themselves are little more than threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, and do not set forth the specific conduct for which each defendant has been sued. In response, the Estate avers it properly identified which Defendants were sued for which counts and provided a straightforward basis on which each claim is grounds for the relief sought.

The Eleventh Circuit has identified four types of shotgun pleadings, but a pleading need only qualify as one of the four to be considered a shotgun pleading. The first type is one "containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before . . . ." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015). The second type is a pleading "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322. The third type is one that does not separate each cause of action or claim for relief into a separate count. *Id.* at 1323. And fourth is a pleading "asserting multiple claims against multiple defendants without specifying which of the defendants are

responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* The intention of avoiding shotgun pleadings is to ensure defendants have short and plain statements that provide adequate notice of the claims brought against them. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294–95 (11th Cir. 2018) (citing Fed. R. Civ. P. 8(a)(2)). Further, it avoids an "intolerable toll" on both the court's docket and the parties involved. *See Cramer v. State of Fla.*, 117 F.3d 1258, 1263 (11th Cir. 1997).

In this instance, while the Court shares the Defendants' concerns about the Estate grouping all Defendants together in its factual allegations and claims, the Court does not find the FAC sufficiently qualifies as a shotgun pleading. From the FAC, sufficient detail is provided for the Court to address the merits of the Defendants' substantive arguments for dismissal, which it does.

**B.    Failure to State a Claim**

### 1. Count One – Eighth Amendment Failure to Protect from Harm

#### a.    Constitutional Violation

In Count One, the Estate sues Dunn, Jones and Lamar under Section 1983 for their alleged failure to protect Campbell from harm in violation of the Eighth Amendment. The Estate does not claim these individuals personally observed or participated in the assault. Instead, the Estate sues them in their individual capacities on a theory of deliberate indifference to Campbell's constitutional rights in

6

performing their roles as persons of authority on the basis that there is a history of widespread abuse at Bullock that put them on notice of the need to correct the alleged deprivations, and they failed to do so.  They move to dismiss, arguing that the Estate has failed to plausibly plead an Eighth Amendment failure to protect claim.

Prison officials "have an obligation to protect prisoners from violence inflicted upon them by other prisoners." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014)); *see also Dickinson v. Cochran,* 833 F. App'x 268, 271 (11th Cir. 2020) (same).  "[A] prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment [only] if the official is deliberately indifferent to a substantial risk of serious harm to an inmate who suffers injury." *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (citations and quotations omitted). A prison official's duty under the Eighth Amendment is to ensure "reasonable safety," "a standard that incorporates due regard for prison officials' 'unenviable task of keeping dangerous men in safe custody under humane conditions.'" *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1970)(citations omitted).  However, "a prison custodian is not the guarantor of a prisoner's safety[,]" *Purcell ex rel. Estate of Morgan v. Toombs Cnty*., 400 F.3d 1313, 1321 (11th Cir. 2005) (citation omitted), and "[i]t is not [ ] every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety," *Farmer*, 511 U.S. at 834.  Prison officials must "take reasonable measures

to guarantee the safety of the inmates," *Hudson*, 468 U.S. at 526–27, but there is no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not," *Farmer*, 511 U.S. at 838.  It is not enough that an inmate proves that the defendant should have known of the risk, but did not, because actual knowledge is the key.  *See, e.g., Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996).

To properly allege deliberate indifference to prisoner-on-prisoner violence, a plaintiff must allege "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Goodman v. Kimbrough*, 718 F.3d 1325, 1331–32 (11th Cir. 2013).

A Section 1983 plaintiff must meet an "extremely rigorous" standard in order to plead a claim against prison officials in their individual capacities.  *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), *abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010).  Supervisory prison officials are not responsible for unconstitutional acts by their subordinates on the basis of *respondeat superior* liability or vicarious liability.  *Id.*  Rather, officials may only be held liable in their individual capacities if they personally participated in unconstitutional conduct or "when there is a causal connection" between their actions (or inactions) and an alleged constitutional deprivation.  *Id.*  "A causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on

notice of the need to correct the alleged deprivation, and he fails to do so,' or when the supervisor's improper 'custom or policy resulted in deliberate indifference to constitutional rights.'" *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (citation and ellipsis omitted).

Two forms of claims exist to establish a causal connection through a history of widespread abuse and a failure to protect from harm. First, a plaintiff may allege that there is such a widespread risk of generalized violence such that "violence was the norm or something close to it." *Marbury*, 936 F.3d at 1234. Second, a plaintiff may point to "specific features of a facility or its population [that] render[ ] it particularly violent." *See Dickinson*, 833 F. App'x at 275.

The Estate alleges that there is a history of exceptionally widespread and systemic prisoner-on-prisoner violence at Bullock, where regular murders, rapes, stabbings and beatings are routine. (Doc. 30 at ¶¶ 10, 44, 46, 55 65.) The Estate also alleges there was mismanagement, understaffing, overcrowding, inadequate security, and misclassification of violent and mentally ill prisoners with low-risk prisoners. (*Id.* at ¶¶ 10, 44, 53, 59, 66, 67, 68, 71, 83, 93.) And that the problems at Bullock and other ADOC facilities has triggered an investigation by the Department of Justice, the result of which has been a scathing report about Bullock and other ADOC facilities and the filing of a lawsuit by DOJ against the State of Alabama alleging that the conditions within the ADOC's prisons, including Bullock,

constitutes an Eighth Amendment violation. (*Id.* at ¶¶ 12, 48, 51–53, 59–61.)   The Estate further alleges that the prisoner population at Bullock is heavily armed and not properly screened for contraband, (*id.* at ¶¶ 39, 44, 56, 57, 58, 72, 73), that inmates regularly obtain and use weapons, (*id.* at ¶ 58), that staff fail to properly respond to inmate threats and violence, (*id.* at ¶ 74), that non-violent inmates are housed in close proximity to known violent and mentally ill inmates, (*id.* at ¶¶ 40, 76), and that the contraband search protocols at Bullock are inadequate, (*id.* at ¶ 72). And, the Estate alleges that all Defendants have knowledge of the substantial risk of serious harm facing inmates at Bullock regarding the chronic assaults. (*Id.* at ¶¶ 14, 45, 47, 56, 57, 84, 86, 89, 100.)  Finally, the Estate similarly alleges that Defendants have failed to take sufficient action to correct the knowingly dangerous situation.

When confronted with well-pled factual allegations, at the Rule 12 stage, the Court must assume that the Defendants knew about all the overcrowding, understaffing, weapons, condition, security issues, housing of violent or mentally ill inmates in general population or with those who are vulnerable or with low security risk designations, and pre-attack incidents and statistics.  Thus, the Defendants knew or should have known that Bullock was a place where inmate-on-inmate assaults and murders were the norm, rather than isolated occurrences, at the time of Campbell's death.  As the court explained in *Wilson v. Dunn*,

> In *Hale v. Tallapoosa County*, for example, a plaintiff sued the jail's supervisor after the plaintiff was beaten in an open cellblock and left

bleeding and unnoticed by guards, for three hours. 50 F.3d 1579 (11th Cir. 1995). At the summary judgment stage, the Eleventh Circuit found a genuine issue as to a substantial risk for several reasons: the jail placed only one jailer on guard duty at a time; the jail failed to train guards; that the jail was overcrowded; the risk of violence increased during times of overcrowding; and fights between inmates occurred 'regularly' within the two years before the plaintiff's injuries, including some fights leaving victims in need of medical care. *Id*. at 1583. The plaintiff also proved a lack of segregation protocols to isolate violent and non-violent prisoners.

618 F.Supp.3d 1253, 1270–71 (N.D. Ala. 2022).

The Estate alleges facts showing many of the same or similar problems here. As in *Hale*, a correctional officer's refusal to intervene left Campbell wounded during and after the attack, despite his calling for help. *See also Cottone,* 326 F.3d at 1358 (finding constitutional violation, in part because of guards' failing to monitor inmates attentively and playing computer games in the guard stand); *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1029 (11th Cir. 2001) (en banc), *abrogated on other grounds by Twombly,* 550 U.S. at 561–63. The Estate also alleges more egregious facts than those in *Hale*, including widespread contraband weapons and a concentration of violent prisoners with nonviolent prisoners. So, the substantial risk found in *Hale* supports a plausible finding of a sufficiently alleged substantial risk here. Indeed, the allegations of widespread history set out here are not significantly different from those referenced by other Alabama district courts that concluded a plaintiff had plausibly alleged an Eighth Amendment failure to protect from harm claim. *See, e.g., Huffman v. Dunn*, No. 4:20-cv-01293-CLM, 2021 WL 2533024, at

*8 (N.D. Ala. June 21, 2021); *D.S. v. Dunn, et al*., No. 2:20-cv-2012-RDP, 2022 WL 1785262, at *9 (N.D. Ala. June 1, 2022); *Wilson v. Dunn*, 618 F.Supp.3d at 1253.

The Court concludes that the Estate's allegations sufficiently align with other case decisions illustrating a substantial risk of serious harm. *See, e.g.*, *Dickinson*, 833 F. App'x at 272–73 (finding plausible Eighth Amendment violation based on overcrowding, understaffing, failure to segregate violent and nonviolent prisoners, failure to adequately supervise inmates, and failure to confiscate weapons and contraband); *Bugge v. Roberts*, 430 F. App'x 753, 759–61 (11th Cir. 2011). The Estate has plausibly alleged more than a generalized risk of violence. It has plausibly alleged the specific features of violence at ADOC correctional facilities in general, and Bullock specifically, that "render[] it particularly violent," *see Dickinson*, 833 F. App'x at 275, or establish that "violence was the norm or something close to it," *Marbury*, 936 F.3d at 1234. Therefore, the Estate has sufficiently pled a plausible Eighth Amendment failure to protect claim in Count One.

### b. Qualified Immunity

The Defendants claim their entitlement to qualified immunity and seek dismissal of Count One on that basis.

"The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which

a reasonable person would have known." *Dickinson*, 833 F. App'x at 271 (quoting *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (citations and quotations omitted)). "To receive qualified immunity, the government official must first prove that he was acting within his discretionary authority." *Id.* If there is no dispute that the defendants were acting within their discretionary authority, as is the case here, the plaintiff bears the burden of showing they are not entitled to qualified immunity. *Id.* at 1099. "To do so, [Plaintiff] must allege that [Defendants]: 1) violated a constitutional right; and 2) that the right was clearly established at the time of the alleged violation." *Dickinson*, 833 F. App'x at 271.

Although "the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be . . . raised and considered on a motion to dismiss." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). "Generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the 'complaint fails to allege the violation of a clearly established constitutional right.'" *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting *St. George*, 285 F.3d at 1337).

Here, the Estate alleges the Defendants violated Campbell's Eighth Amendment rights. "It is well settled that prison officials must take reasonable measures to guarantee the safety of the inmates, and a prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment [only] if the

official is deliberately indifferent to a substantial risk of serious harm to an inmate who suffers injury." *Marbury*, 936 F.3d at 1233 (citations and quotations omitted). As discussed above, the Estate has plausibly alleged that the Defendants violated Campbell's Eighth Amendment rights.  And, at the time of the events giving rise to this case, "the state of the law gave the defendants 'fair warning' that their alleged conduct was unconstitutional." *Corbitt*, 929 F.3d at 1312.  And "materially similar case[s] ha[d] already been decided." *Id.*; *see also Dickinson*, 833 F. App'x at 271 (discussing *Hale*, 50 F.3d at 1583–85 (evidence showed the sheriff "knew that inmate-on-inmate violence was occurring on a regular basis during . . . periods of overcrowding" but failed "to classify or segregate violent from non-violent inmates, . . . adequately train the jailers, and adequately supervise and monitor the inmates.")) and *Marsh*, 268 F.3d at 1028–29 (the Eleventh Circuit held that the plaintiff's allegations established the sheriff's liability for her deliberate indifference to the plaintiff's constitutional rights because "it is an unreasonable response for an official to do nothing when confronted with prison conditions . . . that pose a risk of serious physical harm to inmates.")).

In the FAC, the Estate plausibly alleges facts that, if true, establish that the Defendants are not entitled to qualified immunity.  The Estate alleges that the Defendants were aware of the widespread violence and danger at Bullock at the time of Campbell's assault and death on November 9, 2020, were responsible for fueling

those conditions and allowing their subordinates to do the same, and failed to protect prisoners such as Campbell from the reasonably foreseeable violence that resulted. As of at least 2001, it was "clearly established in this Circuit that it is an unreasonable response for an official to do nothing when confronted with prison conditions . . . that pose a risk of serious physical harm to inmates." *Dickinson*, 833 F. App'x at 274. *See also Marbury*, 936 F.3d at 1234. Thus, Defendants "had 'fair warning' that their alleged failure to correct the known inmate-on-inmate abuse at the jail violated a clearly established constitutional right." *Dickinson*, 833 F.App'x at 275.

Accordingly, the Defendants have failed to show their entitlement to qualified immunity based purely upon the facts pled in the FAC, which must be treated as true at this stage. The Defendants' motions to dismiss this claim based on their claimed entitlement to qualified immunity are thus due to be denied. The Defendants may raise the qualified immunity defense again at the dispositive motion stage.

## 2. Count Two – Eighth Amendment – Deliberate Indifference to Medical Needs

In Count Two, the Estate alleges that Jones and Lamar were deliberately indifferent to Campbell's serious medical needs in violation of the Eighth Amendment. Specifically, the Estate alleges that Jones and Lamar knew that Campbell "was in serious need of medical treatment after being attacked, and failed to obtain medical treatment for him or to take steps to warn others that Mr. Campbell needed medical attention." (Doc. 30 at ¶ 121.) It also claims that they "delayed

providing any medical treatment to Mr. Campbell" and that this delay "resulted in his death after being brutally beaten and stabbed by a fellow inmate." (*Id.* at ¶ 122.) But in other places of the FAC, the Estate alleges that certain "unknown correctional officer(s)" watched the attack while Campbell was bludgeoned to death and took no action and provided no assistance and did not take Campbell to the infirmary. (*Id.* at ¶¶ 29–36.) Jones and Lamar move to dismiss, arguing the Estate has failed to state an Eighth Amendment deliberate indifferent to a serious medical need claim against them.

It is well established that prison personnel may not subject inmates to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry. First, a plaintiff must set forth evidence of an objectively serious medical need. Second, a plaintiff must prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal citations omitted). "[D]eliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).

It can be a violation of the Eighth Amendment for a correctional officer to be deliberately indifferent to an inmate's "serious" medical need. *Ziglar v. Abbasi*, 582 U.S. 120, 148 (2017); *Farmer*, 511 U.S. at 835. The "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Deliberate indifference requires "the knowledge of necessary treatment coupled with a refusal to treat properly or a delay in such treatment." *Howell v. Evans*, 922 F.2d at 712, 721 (11th Cir. 1991). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. Accordingly, because "a finding of deliberate indifference requires a finding of the defendant's subjective awareness of the relevant risk, a genuine issue of material fact exists only if the record contains evidence, albeit circumstantial, of such subjective awareness." *McElligott*, 182 F.3d at 1255 (quoting *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999)).

As to Campbell's medical condition during and immediately after the attack, the FAC factually alleges certain "unknown correctional officer(s)" watched the deadly assault and the brutal injuries that he suffered, did not provide Campbell with any assistance or care, did not notify anyone of Campbell's injuries, and did not take

Campbell to the infirmary.  Thus, according to the FAC, it was only the unknown officers who had knowledge, subjective or otherwise, of Campbell's actual medical condition.  While the FAC makes a conclusory allegation that Jones and Lamar were aware of Campbell's serious medical needs, the FAC makes no factual allegations supporting it.   Indeed, the FAC makes no allegation that Jones or Lamar were present, or that they were ever told of it while Campbell was still alive.  In fact, the FAC alleges that the unknown officers told no one.  A necessary component of any Eighth Amendment deliberate indifference claim is knowledge.  Here, the FAC fails to factually support it, at least with respect to Jones and Lamar.  While Count Two vaguely alleges that Jones and Lamar were aware of Campbell's condition, the allegation is conclusory, void of detail, and contradictory to the Estate's factual allegations against the unknown officers.   As such, Count Two fails to state an Eighth Amendment claim against Jones and Lamar and is therefore due to be dismissed.

### 3.  Count Three – Wrongful Death

Count Three is a state law claim brought under Alabama's wrongful death statute. *See* Ala. Code § 6-5-410.  The Defendants argue that this Court should elect not to retain supplemental jurisdiction over the claim since they are entitled to dismissal of the two federal claims found in Counts One and Two.  As the Court is

not dismissing Count One, the Defendants' supplemental jurisdiction argument is moot.

The Defendants argue in the alternative that they are entitled to state-agent immunity.  "Under Alabama law, [s]tate-agent immunity protects state employees, as agents of the State, in the exercise of their judgment in executing their work responsibilities." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 740 (11th Cir. 2010) (quoting *Ex parte Hayles*, 852 So. 2d 117, 122 (Ala. 2002)).  However, "state-agent immunity do[es] not immunize [Defendants] from liability under state law if they violated [a person's] constitutional rights." *Taylor v. Hughes*, 920 F.3d 729, 734 (11th Cir. 2019).  Moreover, the Alabama Supreme Court has stated that the determination of state-agent immunity is a fact-intensive question generally fit for the summary judgment stage, not the motion to dismiss stage.  *See Ex parte Ala. Dep't of Mental Health & Mental Retardation,* 837 So. 2d 808, 813–14 (Ala. 2002) (it is a "rare case involving the defense of [State-agent] immunity that would be properly disposed of by a dismissal pursuant to Rule 12(b)(6)") (quoting *Ex parte Butts*, 775 So. 2d 173, 177 (Ala. 2000) (quoting *Patton v. Black*, 646 So. 2d 8, 10 (Ala. 1994))).  So "unless the inapplicability of all the *Cranman* exceptions is clear from the face of the complaint, a motion to dismiss based on State-agent immunity must be denied." *Odom v. Helms*, 314 So. 3d 220, 229 n.3 (Ala. 2020) (referencing *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000)).

"[I]n pleading a claim against a State agent, a plaintiff's initial burden is merely to state a cause of action against the defendant." *Id.* The Estate has done so here. "The plaintiff need not anticipate a State-agent-immunity defense by pleading with particularity a *Cranman* exception." *Id.* Nonetheless, the Estate appears to have alleged facts supporting the application of the first *Cranman* exception "which provides that a State agent shall not be immune from liability in his or her individual capacity '(1) when the Constitution or laws of the United States, the Constitution of [Alabama], or [the] laws, rules, or regulations of [Alabama] enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise.'" *Ex parte City of Montgomery*, 272 So. 3d 155, 167 (Ala. 2018) (quoting *Cranman*, 792 So. 2d at 405). The Eleventh Circuit has held that if a state official "potentially" violated an individual's constitutional rights, state-agent immunity is unavailable as an affirmative defense under this exception. *See Taylor v. Hughes,* 920 F.3d 729, 734 (11th Cir. 2019) (holding defendants are not immunized from liability under state law if they violated constitutional rights); *Foster v. Maloney*, 785 F. App'x 810, 818–19 (11th Cir. 2019) (holding "plausible" deliberate indifference to serious medical needs claim stripped officials of state agent immunity for state law claims).

In Count One of the FAC, the Estate alleges that all Defendants violated Campbell's Eighth Amendment right to protection from physical assaults by other

inmates.  Because the Estate does not allege that any of the named Defendants were directly involved with Campbell's death, the Estate proceeds on a failure to protect theory of liability to establish a causal link between the ADOC officials and the alleged constitutional violation.  The Court has already concluded that the Estate has plausibly pled such a claim and, therefore, the Estate has pled enough facts to satisfy the first *Cranman* exception.  As a result, the Court need not discuss the second *Cranman* exception.

The Defendants are not entitled to dismissal on grounds of state-agent immunity with respect to the constitutional violation set forth in Count One.  They are, however, with respect to Count Two since the Court has already concluded that Count Two fails to state a claim against the Defendants under the Eighth Amendment for deliberate indifference to a serious medical need.

## IV.   CONCLUSION

For the reasons stated above, it is

ORDERED that the Defendants' Motions to Dismiss (Docs. 39, 41) are GRANTED in part and DENIED in part as follows:

(1) To the extent the Defendants seek dismissal of Count Two, the Motions to Dismiss are GRANTED;

(2) To the extent the Defendants seek dismissal of Count Three as premised
upon the same constitutional violations which form the basis of Count
Two, the Motions to Dismiss are GRANTED;

(3) The claims against "unknown correctional officers" are DISMISSED.[2]

(4) With respect to Count One and the failure-to-protect claim in Count Three,
the Motions to Dismiss are DENIED. These remaining claims shall
proceed against Defendants Jefferson Dunn, Patricia Jones, and David
Lamar.

**DONE** on this the 9th day of August, 2023.

_____
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE

---

[2] Generally, fictitious party pleading is not permitted in federal court absent very limited
circumstances.  The Estate should expeditiously proceed in determining the names of those
correctional officers who were present at the time of the assault and timely add them to the lawsuit.